Argued February 25, affirmed March 28, 1916.

## ROBINSON *v.* McCART.

(156 Pac. 273.)

**Deeds—Validity—Mental Capacity of Grantor.**

1. Where the preponderance of the evidence showed that the grantor of a trust deed disposing of all his property was a sick, half-demented old man incapable of managing his own affairs, or of estimating the gravity of the conveyance he was making, that he was completely under the influence of his son whom he made trustee, that he had a fear that his divorced wife would attempt to get more of his property, while his children were anxious to have

79 Or.—41

it secured in some way for fear he would marry again, as he seemed anxious to do, being a monomaniac on the subject of marriage, the deed will be set aside for want of capacity.

[As to avoidance of deed of incompetent person in action of ejectment, see note in Ann. Cas. 1915D, 1025.]

From Linn: WILLIAM GALLOWAY, Judge.

Department 2.    Statement by MR. JUSTICE McBRIDE.

This is a suit by Mary Elizabeth Robinson, as administratrix of the estate of George McCart, deceased, Mary Elizabeth Robinson and Isabell Fanton against George A. McCart, Edmund McCart, Hattie Gibbs and Charles McCart, to set aside a deed. The facts are as follows:

George McCart died in Linn County, at Harrisburg, on October 24, 1912, leaving surviving him Elizabeth Robinson, Isabell Fanton, George A. McCart, Edmund McCart, Hattie Gibbs and Chas. McCart. On February 20, 1912, and about eight months prior to his death, George McCart made, signed and executed a written instrument in the nature of a trust deed conveying his property to his son George A. McCart, in trust as therein provided. In this deed the sum of $100 is left to Isabell Fanton, and a one-sixth interest in the estate, which would be the natural share for each child, is left to Mary Elizabeth Robinson. However, the portion assigned to Mrs. Robinson is restricted by a trust arrangement whereby George A. McCart is to hold the same in trust and pay the proceeds therefrom to Mrs. Robinson. Upon the execution of the trust arrangement George A. McCart took charge of his father's property and proceeded to manage and control the same pursuant to the directions in said trust deed set forth. After his father's death he continued in the management and settling of the estate pursuant to said trust deed, and had practically performed his said trust

when on July 14, 1913, plaintiffs instituted this suit to set aside said trust deed and compel George A. McCart to account for the property of George McCart, and Mrs. Robinson was appointed administratrix of the estate of George McCart, deceased, and as administratrix seeks to have the property set over to her. The grounds alleged and relied upon to set this instrument aside are mental incapacity of George McCart to transact such business as making a deed or disposing of his property and undue influence alleged to have been exercised by George A. McCart.

Defendants answer by denying the allegations of the complaint, and also allege that plaintiff Mrs. Robinson was present when the transaction occurred; that she knew the same was being done, and had stood by while the entire estate had been substantially administered upon, and at this late hour ought to be estopped from asserting the claim set forth in her complaint. There was a decree for plaintiffs, and defendants appeal.

AFFIRMED.

For appellants there was a brief over the names of *Messrs. Weatherford & Weatherford* and *Messrs. McFadden & Clark,* with an oral argument by *Mr. Arthur Clark.*

For respondents there was a brief over the names of *Mr. Gale S. Hill* and *Messrs. Hewitt & Sox,* with oral arguments by *Mr. Hill* and *Mr. Henry H. Hewitt.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

1. But one question arises in this case, and that is as to the mental capacity of George McCart to make the trust deed described in the complaint. The testimony

upon this subject occupies several hundred pages, and a reproduction of it here would serve no useful purpose, and in fact, would occupy half a volume of the Oregon Reports. We will only state our conclusions drawn from a careful study of the whole. The deceased was an unlettered man, not being able even to write his name, but possessed of business ability sufficient to enable him to acquire an estate of considerable magnitude. At the time of his death he was about 75 years of age. He came to Oregon from Iowa in 1903. His wife died October 1, 1907, and he remarried June 13, 1910. The second marriage did not prove a happy one, and he was divorced from his second wife in August, 1911. Which party obtained the divorce or for what cause it was granted does not appear. From the time of the death of his first wife there seems to have commenced a gradual decay of his physical and mental faculties. In April, 1910, he had a slight stroke of paralysis, and after that the degradation of his mental and physical faculties became more accentuated. Much of the time he was unable to control his urine and the operation of his bowels, this going to such an extent that his attendant, Mrs. Robinson, had frequently to change his underclothing several times a day and generally to care for him as though he were a child. He was very feeble, and trusted mostly to his son, George A. McCart, to transact and look after his business. He was anxious to marry again, and seemed to have been a monomaniac upon the subject of women and marriage. Shortly before the execution of the trust deed he became imbued with the idea that his second wife, then divorced, would make some demands upon him for more of his property, and advised with the defendant George A. McCart and others as to the best means of avoiding such a contingency. Owing to a childish

or insane disposition on his part to marry again, it is evident that his children were also desirous of having his property placed in such a condition that he might not be misled into a marriage with some designing woman. The fear that his former wife would seek to secure a portion of his remaining property appears to have been entirely groundless, and either a hallucination or suggested by others in order to obtain possession of his property. The whole evidence convinces us that he had not at the time mental capacity to make the conveyance; that he was then wholly under the influence of George A. McCart, and as susceptible to suggestions from him in regard to business matters as a child ten years old would have been to the suggestions of a father. The evidence also indicates that after the conveyance was executed he did not fully realize what he had done, but felt that in a general way he had consummated some proceeding which would defeat the imaginary scheme of his second wife to obtain his property. He was a weak, sick, half-demented, old man, wholly incapable of managing his own affairs or of estimating the consequences or gravity of the conveyance he was making. The very fact of his making the conveyance indicates either that he considered himself incapable of attending to his own affairs or was, by reason of mental incapacity, induced to make it to avoid a contingency which a man of ordinary mental capacity would have known to be impossible.

As before remarked, the evidence is voluminous and somewhat conflicting, but the judge of the Circuit Court had the witnesses before him, and was therefore as able to form an opinion as to its value as are we who get it second hand and in cold type; but even with this disadvantage, we are of the opinion that the testimony

strongly preponderates in favor of plaintiffs' theory, and the decree is therefore affirmed.    AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.

MR. JUSTICE EAKIN took no part in the consideration of this case.